# UNITED STATES DISTRICT COURT
### for the
Southern District of California

AUG 2 0 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                          DEPUTY

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>One GPS device and two cellular telephones seized on<br>July 16, 2019 | )<br>)<br>)<br>)<br>) |

Case No.

**19MJ3523**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, incorporated herein.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B, incorporated herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 46 U.S.C. §§ 70503(a)(1), 70506(b) | Conspiracy to Possess with Intent to Distribute Cocaine On Board a Vessel Subject to the Jurisdiction of the United States |
| Title 21 U.S.C. §§ 959, 963 | International Conspiracy to Distribute Controlled Substances |

The application is based on these facts:
See attached affidavit of Homeland Security Investigation Special Agent Bryan Bauerle.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Bryan Bauerle, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 8/20/19

_____
*Judge's signature*

City and state: San Diego, California

Hon. Bernard G. Skomal, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF SEARCH WARRANT

I, Special Agent Bryan Bauerle, being duly sworn, depose and state as follows:

### INTRODUCTION

1.     This affidavit supports an application to search the following target devices:

One Garmin GPSmap 78, S/N 1WQ125818 ("**Target Device 1**") as described in Attachment A and incorporated herein,

One Motorola Cell phone, black in color, Model – XT1920-18, IMEI – 355535092854252 ("**Target Device 2**") as described in Attachment A and incorporated herein, and

One ZTE cell phone, black in color, Model – Blade A520, IMEI – 862974033502298, S/N – 320174505106 ("**Target Device 3**") as described in Attachment A and incorporated herein,

(collectively referred to as "Target Devices") and to seize evidence of crimes as outlined in Attachment B, and incorporated herein, specifically Title 46 U.S.C. §§ 70503(a)(1), 70506(b)[1], Conspiracy to Possess with Intent to Distribute Cocaine On Board a Vessel Subject to the Jurisdiction of the United States, and Title 21 U.S.C. §§ 959, 963, Conspiracy to Distribute Controlled Substances for the Purpose of Importation into the United States.

2.     Defendants Erick Isaac GOMEZ-Gordillo, Luis Angel CASTILLO-Lopez, and Luis Fernando LOPEZ-Benitez were detained on July 16, 2019, the U.S. Coast Guard Cutter Robert Ward was conducting routine patrol approximately 380 nautical miles south of Puerto Vallarta, Mexico when a go-fast vessel (GFV) was detected. The USCG Cutter Robert Ward diverted to intercept and dispatched two Over the Horizon (OTH)

---

[1]  Title 46 U.S.C. §§ 70503(a)(1) and 70506(b) prohibits the manufacture, distribution, and possession of controlled substances, and conspiracy to commit the same, on vessels subject to jurisdiction of the United States. A vessel is "subject to the jurisdiction of the United States" if the vessel is without nationality. A vessel without nationality includes any vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality.

vessels to intercept the GFV. The two OTH vessels arrived on the scene and boarded the GFV, and arrested three crew members: Erick Isaac GOMEZ-Gordillo, Luis Angel CASTILLO-Lopez, and Luis Fernando LOPEZ-Benitez. The USCG crew members on the OTHs subsequently recovered approximately thirty (30) bales of cocaine with an approximate at-sea weight of 1,400 kilograms (3,080 pounds). The **Target Devices** were seized from the go-fast vessel and/or defendants. The **Target Devices** are in the custody of Homeland Security Investigations in San Diego, California.

3.     Based on the information below, there is probable cause to believe that a search of **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachment B.

## **TRAINING AND EXPERIENCE**

4.     I am a Special Agent with the Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations and have been so employed for approximately twelve (12) years. I have conducted criminal investigations of or relating to narcotics smuggling and other crimes. I have received specific training in the area of narcotics investigations, and I have training and experience in the methods used by narcotics traffickers to import and distribute drugs. I am presently assigned to the Organized Drug Enforcement Task Force (OCDETF) Strikeforce Group in San Diego, California, and my duties include investigating the illicit trafficking of controlled substances into the United States of America. I am cross designated by the United States Drug Enforcement Administration to conduct narcotics investigations and enforce the provisions of the Federal Controlled Substance Act, pursuant to Title 21, United States Code.

5.     I have received formal training, as well as extensive on-the-job experience and training, relative to the investigation of the importation, transportation, sales, manufacturing and distribution of controlled substances. I have also participated in investigations that involved the use of electronic surveillance techniques. I have

1  investigated illicit narcotic and controlled substances that have resulted in arrests,
2  indictments, trials and convictions.   While participating in these and other criminal
3  investigations, I have executed search warrants on businesses, residences, vehicles and
4  storage facilities.  I have also participated in undercover operations that involved the sale,
5  purchase, transportation and importation of controlled substances.  I have participated in
6  investigations   in   which   drug   traffickers   also   relied   heavily   upon   electronic
7  communication facilities and other electronic devices as a means of communicating.  I
8  have interviewed individuals who have been directly and indirectly involved in the
9  importation, transportation, distribution and manufacturing of illegal drugs and controlled
10  substances.

11         6.     Based on my training and experience, I have become familiar with the
12  methods utilized in narcotics trafficking operations and the unique trafficking patterns
13  employed by narcotics organizations.  I have also spoken with senior agents as well as
14  other senior law enforcement officers, about their experiences and the results of their
15  investigations and interviews. I know that drug traffickers often require the use of a
16  communication facility to negotiate times, places, schemes and manners for importing,
17  possessing, concealing, manufacturing and distributing controlled substances and for
18  arranging the disposition of proceeds from the sales of controlled substances. I know that
19  professional drug operations depend upon maintaining their extensive contacts. The
20  communication facility enables drug dealers to maintain contact with drug associates,
21  drug suppliers and drug customers.  I also know that drug traffickers sometimes use
22  fraudulent information, such as nominee names and false addresses, to subscribe to
23  communication facilities, especially emails, cellular phones, messaging apps and
24  frequently use communication facilities to thwart law enforcement efforts to intercept
25  their communications.

26
27
28

7.     Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, I am also aware that:

a.     Drug traffickers will use cellular/satellite telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

b.     Drug traffickers will use cellular/satellite telephones and GPS devices because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

c.     Drug traffickers and their accomplices will use cellular/satellite telephones and GPS devices because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

d.     Drug traffickers will use cellular/satellite telephones and GPS devices to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

e.     Drug traffickers will use cellular/satellite telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings;

f.     The use of cellular/satellite telephones by drug traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data; and

g.     The use of GPS devices by smugglers tends to generate evidence that is stored on the GPS, including, but not limited to address book entries, search history, user profiles and passwords, location history, routes, contacts, saved addresses–tending to indicate who used or controlled the GPS device, and other digital information.

8.     Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular/satellite telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. I also know that GPS devices can and often do contain electronic records

4

1  and data such as contacts location data. This information can be stored within disks,
2  memory cards, deleted data, remnant data, slack space, and temporary or permanent files
3  contained on or in the cellular/satellite telephone. Specifically, I know based upon my
4  training, education, and experience investigating these conspiracies that searches of
5  cellular/satellite telephones and GPS devices yields evidence:

6      a.    tending to identify attempts to transport cocaine or some other controlled
7             substance from South and Central America to Mexico and eventually into
8             the United States;

9      b.    tending to identify accounts, facilities, storage devices, and/or services–such
10             as email addresses, IP addresses, and phone numbers–used to facilitate the
11             transportation of cocaine or some other controlled substance from South and
            Central America to Mexico and eventually into the United States;

12      c.    tending to identify co-conspirators, criminal associates, or others involved
13             in the transportation of cocaine or some other controlled substance from
14             South and Central America to Mexico and eventually into the United States;

15      d.    tending to identify travel to or presence at locations involved in the
16             transportation of cocaine or some other controlled substance from South and
17             Central America to Mexico and eventually into the United States, such as
18             pickup, transfer, and delivery locations, along with the refueling points
            throughout the smuggling venture;

19      e.    tending to identify the user of, or persons with control over or access to, the
20             target device; and/or

21      f.    tending to place in context, identify the creator or recipient of, or establish
22             the time of creation or receipt of communications, records, or data involved
23             in the activities described above.

24      9.    In preparing this affidavit, I have conferred with other agents and law
25  enforcement personnel who are experienced in the area of drug trafficking investigations,
26  and the opinions stated here are shared by them. Further, I have personal knowledge of
27  the following facts, or have had them related to me by persons mentioned in this affidavit.

28

This statement is made in support of an application for a warrant to search **Target Devices** that are believed to contain evidence of violations of Title 46 U.S.C. §§ 70503(a)(1), 70506(b) and Title 21 U.S.C. §§ 959, 963.

10.    Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with other Homeland Security Investigations Special Agents, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise indicated.

## FACTS SUPPORTING PROBABLE CAUSE

11.    On July 16, 2018, U.S. Coast Guard Cutter (USCGC) Robert Ward was conducting a routine patrol in the Eastern Pacific and acquired a Target of Interest (TOI), a Go-Fast Vessel (GFV), approximately 33 miles away from the cutter. The USCGC Robert Ward diverted to intercept and dispatched two Over the Horizon (OTH) vessels to intercept the GFV. The OTHs were vectored into position by a Marine Patrol Aircraft (MPA), and ultimately intercepted the GFV, a 45-foot panga style vessel with a grey hull and three Yamaha 350-HP engines attached.  Upon approaching the GFV, the OTH observed that the GFV was floating dead-in-the-water (DIW), with three subjects on board. As the OTH made contact with the GFV crew, one of the GFV crewman was observed jettisoning what appeared to be an electronic device over the side of the GFV and into the water. The OTH crew were not able to recover the device.  The GFV crew were directed, in Spanish, to move to the bow of the GFV as the OTH Boarding Team (BT) made contact and boarded the GFV. The GFV crew were each asked if they were the master of the vessel and none of the three made claims to be the master. The GFV

crew were then asked their nationality and all three responded "Mexican." All three then declined to make a claim for nationality of the vessel. The BT found no vessel registration on board, no flag being flow, and no other indicia of nationality on board the GFV. The BT observed a tarp that spanned the entire length and width of the GFV, with three slits in the tarp where each of the GFV crew could poke their heads through for visibility. As the tarp was cut away, the BT observed approximately thirty (30) bales, two (2) solar-powered GPS beacon buoys, and approximately fifty (50) 25-gallon fuel containers with varying states of fuel levels. The BT opened one of the bales, revealing approximately thirty (30) individually wrapped bricks wrapped in brown packing tape and rubber, which the BT observed as being consistent with illicit contraband packaging techniques. One of the single bricks was cut into, revealing a white powdery substance, which field-tested positive for the characteristics of cocaine. Following the positive field-test, the three crew members of the GFV, later identified as Erick Isaac GOMEZ-Gordillo, Luis Angel CASTILLO-Lopez, and Luis Fernando LOPEZ-Benitez, were provided personal floatation devices and transferred to one of the OTHs for transport to the USCGC Robert Ward. The bales were then removed from the GFV and transferred to the USCGC Robert Ward as well. USCG personnel seized the bales of cocaine and determined that the bales had an approximate (at sea) weight of 1,400 kilograms (3,080 pounds). The **Target Devices** were seized from the go-fast vessel and/or defendants.

12.    Based upon my experience investigating drug traffickers using go-fast vessels and the particular investigation in this case, I believe that Erick Isaac GOMEZ-Gordillo, Luis Angel CASTILLO-Lopez, and Luis Fernando LOPEZ-Benitez likely used the **Target Devices** to coordinate the conspiracy to possess with intent to distribute cocaine on board a vessel subject to the jurisdiction of the United States and conspiracy to distribute controlled substances for the purpose of importation into the United States. Based on my investigation of drug importation and distribution conspiracies, telephone contact with smugglers can begin several weeks or months before drugs are loaded into

the go-fast vessel, and includes coordination on the pickup, transfer, and delivery locations, along with the refueling points throughout the smuggling venture. I respectfully request permission to search **Target Devices** for data beginning on May 1, 2019, up to and including July 16, 2019.

13.     I also know that search history, user profiles and passwords, location history, routes, contacts, saved addresses–tending to indicate who used or controlled the cellular/satellite telephone, GPS device, and other digital information are stored in the memory of **Target Devices** which may identify other persons involved in drug trafficking activities. Additional contact information for others possibly involved in the conspiracy to distribute controlled substances can be adduced from **Target Devices**.

14.     Based upon my experience and training, consultation with other law enforcement officers experienced in drug trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of Erick Isaac GOMEZ-Gordillo, Luis Angel CASTILLO-Lopez, and Luis Fernando LOPEZ-Benitez, such as search history, user profiles and passwords, location history, routes, contacts, saved addresses–tending to indicate who used or controlled the cellular/satellite telephone and/or GPS device, and other digital information are stored in the memory of **Target Devices**.

## METHODOLOGY

15.     It is not possible to determine, merely by knowing the cellular/satellite telephone or GPS device's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular telephone and GPS service providers now allow for their subscribers to access

their device over the internet and remotely destroy all of the data contained on the device. For that reason, the devices may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network.  Unlike typical computers, many cellular/satellite telephones and GPS devices do not have hard drives or hard drive equivalents and store information in volatile memory within the devices or in memory cards inserted into the devices. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone and GPS models using forensic hardware and software.  Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

16.    Following the issuance of this warrant, I will collect the cellular/satellite telephone and/or GPS device and subject it to analysis. All forensic analysis of the data contained within the cellular/satellite telephone and/or GPS device and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

17.    Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

18.    Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that Erick Isaac GOMEZ-Gordillo, Luis Angel CASTILLO-Lopez, and Luis Fernando LOPEZ-Benitez used **Target Devices** to facilitate

9

the offense of conspiracy to distribute cocaine. The **Target Devices** was likely used to facilitate the offense by transmitting and storing data, which constitutes evidence of violations of Title 46 U.S.C. §§ 70503(a)(1), 70506(b) and Title 21 U.S.C. §§ 959, 963.

19.    Because the **Target Devices** were seized, there is probable cause to believe that evidence of illegal activity related to conspiracy to possess with intent to distribute cocaine on board a vessel subject to the jurisdiction of the United States and conspiracy to distribute controlled substances for the purpose of importation into the United States committed by Erick Isaac GOMEZ-Gordillo, Luis Angel CASTILLO-Lopez, and Luis Fernando LOPEZ-Benitez continues to exist on the **Target Devices**.

20.    WHEREFORE, I request that the court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers to search the items described in Attachment A, and to seize items listed in Attachments B, using the methodology described above.

I swear the foregoing is true and correct to the best of my knowledge and belief.


Bryan Bauerle
Special Agent
Homeland Security Investigations


Subscribed and sworn to before me this ___20___ day of August, 2019.


HON. BERNARD G. SKOMAL
United States Magistrate Judge

## ATTACHMENT A

### PROPERTY TO BE SEARCHED

The property to be searched in connection with an investigation of violations of Title 46 U.S.C. §§ 70503(a)(1), 70506(b), Conspiracy to Possess with Intent to Distribute Cocaine On Board a Vessel Subject to the Jurisdiction of the United States, and Title 21 U.S.C. §§ 959, 963, Conspiracy to Distribute Controlled Substances for the Purpose of Importation into the United States is described below:

One Garmin GPSmap 78, S/N 1WQ125818 ("**Target Device 1**"),

One Motorola Cell phone, black in color, Model – XT1920-18, IMEI – 355535092854252 ("**Target Device 2**"), and

One ZTE cell phone, black in color, Model – Blade A520, IMEI – 862974033502298, S/N – 320174505106 ("**Target Device 3**"),

(collectively referred to as "Target Devices").

Target Devices are currently in the possession of United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the cellular/satellite telephones and/or GPS devices described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/ satellite telephones and/or GPS devices. The seizure and search of the cellular/ satellite telephones and/or GPS devices will be conducted in accordance with the procedures outlined in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular/ satellite telephones and/or GPS devices will be electronic records, communications, and data such as location data, for the period of May 1, 2019, up to and including July 16, 2019:

a. tending to identify attempts to transport cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States;

d. tending to identify travel to or presence at locations involved in the transportation of cocaine or some other controlled substance from South and Central America to Mexico and eventually into the United States, such as pickup, transfer, and delivery locations, along with the refueling points throughout the smuggling venture;

e. tending to identify the user of, or persons with control over or access to, the target device; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**which are evidence of violations of Title 46 U.S.C. §§ 70503(a)(1), 70506(b) and Title 21 U.S.C. §§ 959, 963.**